**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| v.    ) | Criminal No. 08-231(EGS) |
| ) | |
| ) | |
| THEODORE F. STEVENS,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

**<u>MEMORANDUM OPINION & ORDER</u>**

Pending before the Court is (1) the government's motion to file *ex parte* an unredacted "self-styled whistleblower complaint" ("complaint") written by a federal employee, which raises allegations of misconduct related to the investigation and trial in this case; and (2) the government's motion to file a redacted version of the complaint under seal. The government provided the redacted version to the defense with its motion to seal and seeks a protective order related to that production. The defendant opposes both motions, arguing that both the defendant and the public should have access to the unredacted complaint. The employee who authored the complaint, and who is represented by counsel, is opposed to the complaint being made public. Upon consideration of the pleadings filed by the parties, oral arguments on the pending motions heard in a sealed hearing on December 19, 2008, and the relevant law, and for the reasons set forth herein, the Court (1) **DENIES** the motion to file *ex parte*

1

and directs the government to provide an unredacted copy of the complaint to the defense, subject to a protective order; and (2) **GRANTS IN PART AND DENIES IN PART** the government's motion to file the complaint under seal. Accordingly, the Court will provide counsel with a copy of the Court's final redacted complaint by no later than 4:00 p.m. on December 20, 2008. At 4:00 p.m. on Monday, December 22, 2008, the Court will post the redacted copy of the complaint on the public docket. All other pleadings and transcripts associated with the pending motions shall remain sealed pending further order of the Court.

## I.   Background

Senator Ted Stevens was charged in a seven-count indictment with making false statements in violation of 18 U.S.C. § 1001(a)(1) and (2). Specifically, the defendant was charged with failing to report on his Senate Financial Disclosure Forms a number of gifts he received from Bill Allen, the CEO of VECO Corporation, and others, including renovations on his home in Girdwood, Alaska. The Federal Bureau of Investigation's ("FBI") investigation into the defendant's conduct was based in Alaska and was part of an ongoing federal investigation into corruption in the State of Alaska. That investigation involved VECO, Bill Allen, and a number of public officials. Some of these individuals, including Bill Allen, pled guilty or were convicted after trial in Alaska based on charges that resulted from the

government's corruption investigation.  Those cases, as well as this one, were prosecuted by attorneys from the United States Attorney's Office in Alaska and attorneys from the Department of Justice's Public Integrity Section.

After three days of voir dire, a jury trial in this case commenced before this Court on September 25, 2008, in Washington, D.C.  Bill Allen testified as a government witness against the defendant.  Before and during the trial, a number of allegations of discovery violations and prosecutorial misconduct were raised by the defense and the defense filed several motions for mistrial and/or to dismiss the case based on these allegations.  On at least one occasion, the Court briefly adjourned the trial in order to consider briefing and hear arguments on these motions.  Based on the information presented to the Court at that time, the Court made findings and took steps to address and remedy certain discovery violations and the prosecution's misconduct, including but not limited to, ordering the government to produce all grand jury transcripts and unredacted FBI 302 forms, striking certain evidence from the record, instructing the jury as to certain evidence, and striking portions of the indictment.  The Court denied the motions to dismiss the case or declare a mistrial.  On October 27, 2008, the jury returned verdicts of "guilty" on all seven counts in the indictment.

On the afternoon of December 11, 2008, the government filed

a "Sealed Memorandum" ("Memorandum") accompanied by a motion to
seal, pursuant to Local Criminal Rule 49.1(h), and for a
protective order.  The Memorandum notified the Court that the
government's attorneys in this case had received a copy of a
"self-styled whistleblower complaint" on December 2, 2008.  A
redacted version of the complaint was attached to the Memorandum.
The government also filed a motion to file *ex parte* an unredacted
copy of the complaint, which is authored by a federal employee
with extensive knowledge of the investigation and trial in this
case.  The complaint alleges that at least two federal employees
intentionally violated policies, procedures, discovery and other
legal obligations associated with the government's investigation
in Alaska and Senator Stevens' trial.  Some of the allegations in
the complaint specifically address matters that were litigated
during the trial and were the source of the defendant's motions
to dismiss and/or to declare a mistrial.  For example, the
complaint alleges that a law enforcement officer who worked
closely on the investigation and trial had inappropriate contacts
and communications with key government witnesses and sources and
intentionally withheld *Brady* information from the defense "to fit
the Brady/Giglio letter that had been previously provided to the
defense."  The complaint also alleges that a member of the
prosecution team schemed to relocate a witness in order to keep
him from testifying and sought to conceal *Jencks* and/or *Brady*

information from the defense.

The defendant filed oppositions to both the motion to seal the redacted complaint and the motion to file the unredacted complaint *ex parte*. Recognizing the important and competing interests at issue, including the defendant's constitutional rights, the public's constitutional rights, the complaining employee's privacy interests and the privacy interests and due process rights of the individuals named in the complaint, the Court held a sealed, on-the-record conference call with counsel for the parties on December 15, 2008, and directed the government to file a response to the defendant's opposition to the motion to seal and the motion to file *ex parte*. The Court, over the defendant's objection, also directed the government to provide the complainant with copies of the pleadings and inform the complainant that the Court was considering denying the motion to seal and releasing a redacted version of the complaint to the public. The government was further directed to ascertain (a) whether the complainant had an attorney; (b) if not, whether the complainant wished to have an attorney appointed by the Court; and, (c) what, if any, position the complainant had taken with respect to the complaint being made public. The Court scheduled a sealed hearing on the motions for December 19, 2008 at 9:30 a.m.

In response to the Court's Order, the government informed

the Court on December 17, 2008, that the complainant was represented by counsel, did not wish to have the Court appoint counsel, and was opposed to the complaint being released to the public.  Following a second sealed, on-the-record conference call with the parties on December 17, 2008, the Court ordered that complainant's counsel could participate in the sealed hearing and could file a sealed pleading with respect to his client's position on the pending motions.

On December 19, 2008, the Court heard argument on the motion to file *ex parte* and the motion to seal.  Counsel for the government reiterated its position that the information in the complaint does not impact the integrity of the trial or the verdicts in this case and should be sealed.  Counsel for the government also urged the Court to seal the complaint because of the privacy interests involved, particularly the privacy interests of the author and the primary subject of the complaint.

Defense counsel argued that the defendant has important constitutional rights at issue and that the defendant cannot adequately address the allegations in the complaint and any impact on the verdicts in this case unless the complaint and any proceedings that result from this complaint are open to the public.

Counsel for the complainant objected to any public disclosure of the complaint.  He argued that the complainant

6

would not have filed the complaint, at least in the form it was filed, had the complainant known that it might be made public. Counsel for the complainant also stated that the complainant never intended the complaint to be disclosed.  Complainant's counsel stressed the important policy considerations underlying whistleblower protections and noted the potentially significant negative ramifications for his client if the complaint is made public.  When asked by the Court, however, complainant's counsel acknowledged that he was aware of no statutory or legal authority on point that addresses these unique circumstances and that would support elevating his client's privacy interests above the interests of a criminal defendant in a situation such as the one now before this Court.

At the conclusion of the hearing, the Court informed the parties that the motion to file *ex parte* would be **DENIED**.  In response to an inquiry by the Court, the government did not request a stay of the Court's Order on that motion.  The Court then provided counsel for the defendant with a copy of the unredacted complaint.  Further, in accordance with the Court's ruling that it would file on the public docket a copy of the complaint with appropriate redactions to protect, to the extent possible, the privacy interests of the individuals named in the complaint, the Court distributed to all counsel its proposed redactions and invited objections and suggestions.

Counsel for the complainant requested an opportunity to consult with his client regarding any redactions and asked to submit any objections or requests for additional redactions through government counsel.  The Court granted that request and directed the government to file its objections and/or proposed redactions and any objections or proposed redactions from the complainant by 2:00 p.m. on December 19, 2008.

The defendant objected to any redactions and specifically objected to two areas of concern to the defense.  In response to the government's proposed redactions, the defendant raised additional objections.

Having considered the parties' respective objections and requests regarding appropriate redactions to the complaint, the Court will provide counsel with a copy of the Court's final appropriately redacted complaint by no later than 4:00 p.m. on December 20, 2008.  At 4:00 p.m. on Monday, December 22, 2008, the Court will post the redacted complaint on the public docket.

The Court informed the parties at the conclusion of the sealed hearing on December 19, 2008, that a Memorandum Opinion and Order would be issued later that day.  This Memorandum Opinion and Order articulates the Court's attempt to balance and protect the competing rights and interests implicated by the government's motions and discusses the legal authority for the Court's resolution of those motions.

II.  **The Government's Motion to File the Unredacted Complaint *Ex Parte***

The government seeks leave to file the unredacted complaint with the Court *ex parte* in order for the Court to determine what has been redacted from the version provided to the defense.  The government maintains that the *ex parte* filing is necessary "because certain information, if disclosed, could threaten or impede ongoing investigations, the rights of innocent third parties, and the privacy interests of individuals and entities." The government further contends that a sealed record is warranted given the confidential and sensitive nature of the information in the submission.

In urging this Court to exercise its discretion to limit public disclosure of confidential documents, the government cites *Willingham v. Ashcroft*, 355 F. Supp. 2d 390, 391 (D.D.C. 2005), and *Johnson v. Greater Southeast Community Hospital*, 951 F.2d 1268, 1277 n.14 (D.C. Cir. 1991).  As discussed in the following section, however, the analysis in those cases is relevant to the government's motion to seal the complaint, not to whether defense counsel should receive an unredacted version of the complaint. The only reason offered by the government for redacting the complaint produced to the defendant appears to be based on the government's position that a number of the allegations "relate to sources, events, or materials that bear no relationship whatsoever to the *Stevens* prosecution."  The government therefore

claims it has redacted "only plainly irrelevant material."

The Court flatly rejects the government's position.  Having compared the redacted and unredacted complaints, there are several instances where information that is arguably directly relevant to the investigation and/or trial in this case was redacted by the government.  For example, the government redacted an allegation that one employee working on the investigation "accepted multiple things of value" from sources cooperating with the investigation, including artwork and employment for a relative.  Surely the Court does not need to remind the government that the defendant in this case was convicted for failing to disclose that *he* had accepted multiple things of value and, in fact, the trial included testimony about his receipt of artwork and employment for a relative.  Whether the allegation in the complaint is true and, if true, whether it bears on the outcome of the trial remains to be seen, but it can hardly be argued that this information is "plainly irrelevant" to the investigation and prosecution of the defendant.  Likewise, allegations of misconduct by an individual in a related investigation or trial may be highly relevant to the role that individual played in this investigation or trial.

In a footnote in its reply brief in support of its motion to seal, the government says only, "[a]ssuming *arguendo* that the information contained in the Complaint is exculpatory, there is

simply no requirement that all *Brady* material be publicly available."  Similarly, in response to repeated questioning from the Court during the sealed hearing, government counsel refused to answer whether in the counsel's view this information was relevant, whether it was favorable and even whether, hypothetically, if counsel were a defense attorney, that attorney would want this information.  The government's refusal to acknowledge the information in the complaint as exculpatory, and therefore subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), blinks at reality.  Whether they are true or not, there can be little doubt that the allegations in the complaint are exculpatory, that is, favorable to the accused.[1]  *See United States v. Andrews*, 532 F.3d 900, 905 (D.C. Cir. 2008).

Finally, as noted by the defendant, *ex parte* communications between prosecutors and the trial judge "are greatly discouraged and should only be permitted in the rarest of circumstances." *See United States v. Rezaq*, 899 F. Supp. 697 (D.D.C. 1997) (citing *United States v. Napue*, 834 F.2d 1311, 1316 (7th Cir. 1987), and *United States v. Presser*, 828 F.2d 330 (6th Cir. 1987)).  This Court firmly agrees that such *ex parte*

---

[1] Obviously, a statement may be exculpatory and subject to disclosure to the defense, even if the government believes the statement is untrue and even if it later proves to be untrue. For example, if a witness is interviewed by the police and provides an alibi for a suspect, that statement must be produced, even if the government suspects the statement is untrue and, indeed, even if it later proves to be untrue.

communications should be rare and used only in exceptional circumstances.  These circumstances, while perhaps unusual, are not the exceptional circumstances that should condone what are otherwise "greatly discouraged" *ex parte* communications between prosecutors and the trial judge.  Therefore, the Court **DENIES** the motion to file *ex parte* and directs the government to provide an unredacted copy of the complaint to the defendant forthwith, subject to the terms of an appropriate protective order.

### III. The Government's Motion to File the Redacted Complaint Under Seal

The government also asks this Court to exercise its discretion and seal the complaint and all related pleadings from public disclosure.  The government characterizes the complaint as "merely discovery" and maintains that neither the Sixth Amendment's guarantee of a public trial, the public's First Amendment right to access judicial proceedings, nor the common law right of access mandate disclosure of the complaint.  The government also contends that even if these rights do apply, the complaint should nevertheless be sealed because of the overriding interests at issue here, namely "disclosure of sensitive information, encroachment on individual rights, and interference with ongoing internal investigations."

The defendant strongly opposes sealing the redacted complaint, arguing that the complaint must be made public based on the defendant's right to a public trial guaranteed by the

12

Sixth Amendment and the public's right to access judicial proceedings guaranteed by the First Amendment.  In addition, or in the alternative, the defendant contends that the complaint should be made public under the common law's right of public access to judicial proceedings.  As discussed below, the Court agrees with the defendant on both counts: the constitutional and common law rights to public access in this case require disclosure of the complaint, subject to limited redactions to protect the privacy and other interests implicated by the disclosure.

### A.    Constitutional Rights Implicated by the Government's Motion to Seal

The Sixth Amendment guarantees a criminal defendant the right to a "public trial."  U.S. Const. amend. VI.  The First Amendment guarantees the public access to criminal trials, *see, e.g., Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and the courts have extended that right to proceedings beyond the actual trial, *see, e.g., Waller v. Georgia*, 467 U.S. 39, 48 (1984) (suppression hearings); *Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (plea agreements).

The government first argues that because this proceeding is not at the trial stage, the defendant's Sixth Amendment right is not implicated by the motion to seal the complaint.  Next, the

13

government asserts that the defendant incorrectly relies on *Waller* to argue that his Sixth Amendment right is co-extensive with the public's right of access to criminal trials.  The government seeks to distinguish *Waller*, in which the Supreme Court held that the defendant's Sixth Amendment right to a public trial was not limited to the trial itself, but also extended to a suppression hearing.  This Court, however, is not persuaded by the government's argument.  Rather, the Court finds that under the reasoning of *Waller*, the defendant's Sixth Amendment right to a public trial extends to the current circumstances and supports disclosure, especially where, as here, the allegations in the complaint will be relevant to the post-trial, presentence litigation currently underway in this case.

The issue in *Waller* was "the extent to which a hearing on a motion to suppress evidence may be closed to the public over the objection of the defendant consistently with the Sixth and Fourteenth Amendment right to a public trial."  467 U.S. at 40-41.  Citing a number of cases where the Court found a qualified *First Amendment* right to attend criminal proceedings, the Court noted that

> [i]n each of these cases the Court has made clear that
> the right to an open trial may give way in certain
> cases to other rights or interests, such as the
> defendant's right to a fair trial or the government's
> interest in inhibiting disclosure of sensitive
> information.  Such circumstances will be rare, however,
> and the balance of interests must be struck with
> special care.  We stated the applicable rules in *Press-*

14

*Enterprise* [*Co. v. Superior Court of California*, 464
U.S. 501, 510 (1984)]:

> The presumption of openness may be overcome
> only by an overriding interest based on
> findings that closure is essential to
> preserve higher values and is narrowly
> tailored to serve that interest.  The
> interest is to be articulated along with
> findings specific enough that a reviewing
> court can determine whether the closure order
> was properly entered.

*Waller*, 467 U.S. at 45 (other internal citations omitted).

Recognizing that it was largely referencing cases deciding
the public's First Amendment right to access proceedings, rather
than a defendant's Sixth Amendment right to a public trial, the
Court concluded,

> there can be little doubt that the explicit Sixth
> Amendment right of the accused is no less protective of
> a public trial than the implicit First Amendment right
> of the press and public.  The central aim of a criminal
> proceeding must be to try the accused fairly, and
> "[o]ur cases have uniformly recognized the public-trial
> guarantee as one created for the benefit of the
> defendant."

*Id.* at 46 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380
(1979)).

Finally, it is important to emphasize the reasoning
underlying the *Waller* Court's decision to extend the Sixth
Amendment right to the context of a suppression hearings.  As the
Court explained:

> The need for an open proceeding may be particularly
> strong with respect to suppression hearings.  A
> challenge to the seizure of evidence *frequently attacks
> the conduct of police and prosecutor*. . . .  The public

15

in general also has a strong interest *in exposing substantial allegations of police misconduct* to the salutary effects of public scrutiny.

*Id.* at 47 (emphasis added). Here, the content of the complaint "attacks the conduct of police and prosecutor" in a highly publicized trial and addresses many of the very same issues of misconduct that were raised during that trial. This Court finds that under the reasoning of *Waller*, the defendant has a Sixth Amendment right and the public has a First Amendment right to disclosure of the complaint. As a result of this conclusion, any order to seal the complaint must meet the *Press-Enterprise* test: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 464 U.S. at 510.

Similarly, in *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991), the D.C. Circuit upheld a First Amendment challenge to the trial court's order sealing portions of a plea agreement. The appellate court began its analysis by stating that the First Amendment "guarantees the press and the public a general right of access to *court proceedings* and *court documents* unless there are compelling reasons why it cannot be observed." *Id.* at 287 (emphasis added). In deciding that such access extends to plea agreements, the court referred to the Supreme Court's two-part test articulated in *Globe Newspaper* and

16

determined that: "Under that test, the first amendment protects public access to an aspect of court proceedings if such access has historically been available, *and serves an important function of monitoring prosecutorial or judicial misconduct*." *Id.* at 287-88 (emphasis added) (citing *Press-Enterprise*, 478 U.S. at 8; *Globe Newspaper*, 457 U.S. at 605-07 ("Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.")).

This Court finds, in accordance with *Robinson*, that the two-part test is satisfied in this case and that therefore the First Amendment protects the public's access to the complaint.  First, the public certainly had access to the defendant's trial, which was widely covered by the national media.  Second, access to the complaint and any resulting proceedings are likely to serve the important function of monitoring prosecutorial misconduct, especially where, as here, motions made during the trial raised such allegations and the complaint specifically includes allegations of such misconduct.

Having found that both the Sixth and First Amendments ordinarily afford the public a right to access under these circumstances, the Court will only seal the complaint if the *Press-Enterprise* test is satisfied.  The government's motion to

seal does not satisfy that test.

In *Press-Enterprise*, the Supreme Court articulated the test for when the Sixth and/or First Amendment rights to public access must yield to other interests:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise*, 464 U.S. at 510.

The government argues that even if the Court finds, as it has, that the First and Sixth Amendment rights to public access apply to the motion to seal the complaint, the Court should nevertheless grant the motion to seal based on "overriding interests."  Specifically, the government maintains that (1) the complaint contains sensitive information; (2) "most importantly, [the complainant] did not intend for [the] document to be made publicly available and requests that it remain confidential"; (3) the allegations in the complaint are under investigation by the Department of Justice's Office of Professional Responsibility ("OPR") that may be impeded or tainted by disclosure; and (4) this is a "sensitive, internal matter with personal and professional implications for multiple civil servants who are entitled to due process and their administrative rights."

While the Court recognizes the competing interests at issue

and the sensitive nature of the information, it cannot be said that these interests represent "higher values" than the defendant's and the public's rights previously discussed.  The complainant and the individuals named in the complaint may have legitimate and significant privacy interests and due process rights at stake, but those rights and interests do not trump the defendant's rights under these circumstances to challenge his conviction with exculpatory evidence provided in the complaint.[2] This is especially true where the complainant and the named individuals are not strangers to these proceedings, but rather were significantly involved in the investigation and prosecution of the defendant.

Similarly, it would be patently unfair to curtail the

---

[2] An Order sealing the complaint would hamper the defendant's ability to thoroughly investigate the allegations in the complaint and effectively argue to the Court the relevance of those allegations.  For example, the defendant would not be able to question other individuals who may have relevant information regarding the allegations in the complaint, in an effort to determine whether and to what extent the allegations are true, and, if true, whether they tainted the investigation and trial in this case.  Moreover, where, as here, the defendant has repeatedly made allegations of discovery abuses and prosecutorial misconduct and has indicated an intent to seek additional relief - including a motion to dismiss the indictment and/or for a new trial - those pleadings and all related proceedings would have to be sealed.  That would not only frustrate the public's significant interest in these proceedings, but would provide the public with only a part of the picture.  Finally, at the end of what could be protracted sealed proceedings, the Court would be left in the untenable position of ruling on what could be very significant factual and/or legal issues without providing the public with any information regarding the reasons for those rulings.

defendant's ability to challenge his convictions based on alleged prosecutorial and law enforcement misconduct simply because that conduct is under investigation by the Department of Justice. Moreover, the Court notes that it was the investigating office that apparently recognized the relevance of the complaint to these proceedings; the Court's understanding based on the government's representations is that OPR brought the complaint to the Public Integrity Section's attention.  Over the following nine days, attorneys in that section received "additional information, guidance and advice to satisfy [themselves] that any possible statutory and regulatory confidentiality concerns surrounding a request for whistleblower protection had been fully explored and addressed, and would not prohibit a disclosure to the Court at a minimum."

     In an effort not to impede OPR's investigation, however, and to protect the individuals' privacy and due process rights to the extent possible without interfering with the defendant's and the public's constitutional rights, the Court will redact from the publicly disclosed complaint the names and identifying information of both the complainant and the subjects of the complaint.

**B.    The Court Will Not Exercise Its Discretion to Seal the Complaint Under the Circumstances in this Case**

     Finally, the government argues that notwithstanding any constitutional rights, the Court should exercise its discretion

and grant the motion to seal the complaint.  In addition to the
arguments articulated in the preceding section, such as the
privacy and due process rights of the individuals named in the
complaint and the ongoing investigation, the government also
argues that the Court should exercise its discretion and seal the
complaint because the complaint does not contain any information
that "actually affects the integrity or the result of the
defendant's trial."  Specifically, the government contends that
the allegations are irrelevant because (1) the individuals named
in the complaint did not testify at trial; and (2) the issues
raised in the complaint, such as the *Brady* violations and the
witness relocation, have already been litigated and remedied or
addressed by the Court.

    The government entirely misses the mark.  To say that
misconduct by law enforcement officers would not affect the
integrity or result of a trial simply because the officers did
not testify at trial is baseless; if that were the case, the
government would be free to engage in rampant misconduct without
risk or ramification, provided the prosecution took care not to
call any of the violators as witnesses.  Moreover, misconduct by
law enforcement officers during the *investigation*, such as that
alleged in the complaint - for example, inappropriate contacts
with cooperating sources who did testify for the government and
intentional withholding of *Brady* material - could have an impact

regardless of whether the officers testified.

The government's assertion that the issues in the complaint do not bear on the integrity or result of the trial merely because the Court already considered and addressed those issues is similarly unavailing.  The issues were litigated and addressed *based on the information before the Court at the time*, including, importantly, representations by the complainant and individuals named in the complaint.  If the complaint provides information that was not available to the Court at the time, and/or information that contradicts the government's representations to the Court at the time, that information could obviously bear on the integrity or result of the trial.

Even if the First and Sixth Amendments did not mandate disclosure of the complaint, it would be inappropriate to seal the complaint under these circumstances, based on the six-part analysis for determining whether information should be sealed from public disclosure.  *See United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1981).

### 1.    The *Hubbard* Factors Weigh in Favor of Disclosure

In *Hubbard*, the trial court released to the public multiple documents that had been seized from a third party nondefendant. 650 F.2d at 295.  The documents had been introduced in the trial court only "under seal [and] only in a pretrial suppression hearing and only for the purpose of showing that the search and

seizure were unlawful." *Id.* While recognizing the "common law tradition of public access to records of a judicial proceeding," the D.C. Circuit noted that the tradition was not without exceptions. *Id.* at 314-315.

First, the Court notes that the exceptions to public access cited in *Hubbard,* for example closing court proceedings or documents to protect trade secrets, the privacy and reputation of crime victims, national security interests, and to reduce the danger of an unfair trial by adverse publicity, *id.* at 315-16, are far different from the interests articulated by the government in its motion to seal the complaint. An ongoing internal investigation of the government officials named in the complaint and involved with the investigation and trial, and those individuals' privacy rights, as well as the complainant's privacy rights where the complainant was also extensively involved in the investigation and trial, do not rise to the level of trade secrets, crime victims' privacy interests, national security concerns, or the danger of an unfair trial due to adverse publicity.

The six factors set forth in *Hubbard* for determining when an exception to the common law's tradition of open proceedings is justified are: (1) the need for public access to the information; (2) public use of the information; (3) fact of objection and identity of those objecting to disclosure; (4) strength of the

generalized property and privacy interests asserted; (5)
possibility of prejudice; and (6) the purposes for which the
documents were introduced.  *Id.* at 317-21.

### i.    The need for public access to the information

Significantly, the court in *Hubbard* noted that the case
before it did *not* involve "access to the courtroom conduct of a
criminal trial," or "access to documents which have been
introduced as evidence of guilt or innocence in a trial, nor even
documents whose contents have been discussed or insofar as we can
determine relied upon by the trial judge in his decision on the
defendants' motion to suppress."  *Id.* at 317.

In contrast, the allegations in the complaint at issue here
clearly involve access to courtroom conduct and access to
documents which were introduced as evidence of guilt or innocence
at trial and information that was relied upon by the Court in
decisions on various issues raised during the proceedings.  To
seal the complaint would be to deprive the public of information
that directly addresses courtroom conduct, documents that were
introduced at trial, and information that was relied upon by the
Court for various decisions throughout the proceedings.  This
factor weighs in favor of disclosure.

### ii.    The extent to which the public previously had access to the information

To say that the public's interest in this case was and is

significant would be an understatement.  In fact, even post-trial, the media has had an interest in the case.[3]  As the defendant points out, the government previously went to great lengths to provide the public with access to evidence and documents introduced at trial, including creating a website on the Department of Justice server, and distributing copies of all wiretaps introduced at trial.

Given the public interest in and access to the pre-trial and trial proceedings and the indication of public interest in the post-trial proceedings, this factor clearly weighs in favor of disclosure.

### iii.  Fact of objection and identity of those objecting to disclosure

In *Hubbard*, the court emphasized that the defendants and the third-party nondefendant had timely and strenuously objected to disclosure.  Here, the complainant objects to disclosure,[4] as does the government on behalf of the investigating authority and the individuals named in the complaint.  This factor is

---

[3] *See, e.g.*, Del Quentin Wilber, *Hearing Set Into Letter by Witness in Stevens Trial*, Wash. Post, Nov. 26, 2008, at A2; Richard Mauer, *Letter Adds New Twist to Stevens Conviction*, Anchorage Daily News, Nov. 22, 2008, at A1.

[4] In *Hubbard,* the D.C. Circuit said that "the strength with which a party asserts its interests is a significant indication of the importance of those rights to that party."  *Id.* at 319. The Court notes that the complainant's attorney was given an opportunity to file a pleading addressing the motion to seal and chose not to do so.  The attorney did, however, argue against disclosure at the December 19, 2008 hearing.

significant and could weigh against disclosure.  The Court
recognizes that the complainant has a strong privacy interest,
and as a general matter both that interest and the policies
underlying the whistleblower protections under which the
complainant has sought refuge counsel against public disclosure
of the complaint.  *See, e.g.*, *Haley v. Retsinas*, 138 F.3d 1245,
1250 (8th Cir. 1998) ("Laws protecting whistleblowers are meant
to encourage employees to report illegal practices without fear
of reprisal by their employers."); *Wren v. Merit Sys. Prot. Bd.*,
681 F.2d 867, 872 (D.C. Cir. 1982) ("Whenever misdeeds take place
in a Federal agency, there are employees who know that it has
occurred, and who are outraged by it.  What is needed is a means
to assure them that they will not suffer if they help uncover and
correct administrative abuses." (quoting S. Rep. No. 95-969, at 8
(1978) (discussing whistleblower provision of the Civil Service
Reform Act of 1978))).  The Court is also aware that, as a
practical matter, the public disclosure of the complaint may have
an adverse impact on the complainant.  *See Mgmt. Info. Techs.,*
*Inc. v. Alyeska Pipeline Serv. Co.*, 151 F.R.D. 478, 481 (D.D.C.
1993) (recognizing that "[t]he case law, academic studies, and
newspaper accounts well document the kind of treatment that is
usually visited upon public and private employees who speak out
as a matter of conscience on issues of public concern").  This
factor is somewhat mitigated, however, by the Court's decision to

26

redact the individuals' names and identifying information, including that of the complainant, and by the individuals' involvement in and relationship to the investigation and trial in this case.

### iv. The strength of the property and privacy interests involved

Again, while the privacy interests of the individuals involved and the integrity of the OPR investigation are not insignificant, they do not trump the defendant's interest in having the allegations in the complaint openly litigated. Moreover, as the defendant points out, the subjects of the OPR investigation, as well as a number of other people involved, already know of the allegations in the complaint. Finally, as stated above, this factor is mitigated by the redactions made to the complaint.

### v. Possibility of prejudice

The possibility of prejudice to both sides is significant. If the allegations are unfounded, the individuals' reputations and careers could nonetheless be negatively impacted. On the other hand, the defendant has been the subject of extensive negative publicity as a result of the trial, has been convicted and is facing sentencing, and has a liberty interest at stake. If he is not able to disclose this information and, if appropriate, use it to openly and systematically challenge his conviction, the prejudice to him is severe. Therefore, this

27

factor weighs in favor of disclosure.

> **vi.   The purpose for which the documents were introduced**

This was the "single most important element" in the *Hubbard* court's conclusion that the documents should not have been disclosed.  *Id.* at 321.  The reason for that conclusion, as the court emphasized, was that the documents "were not determined by the trial judge to be relevant to the crimes charged; they were not used in the subsequent 'trial;' nor were they described or even expressly relied upon by the trial judge in his decision on the suppression motion."  650 F.2d at 321.

In contrast, the allegations in the complaint are "relevant" to the trial and in some instances relate to information expressly relied upon by the Court in its rulings on the various discovery disputes and on several of the defendant's motions. Moreover, as the defendant points out, this complaint was – or should have been – produced as part of the government's ongoing *Brady* obligations.  For all of these reasons, this factor weighs in favor of disclosure.

## IV. Conclusion

As the *Hubbard* court explained, "[a]ccess to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally."  *Id.* at 314-15.  If ensuring the integrity of

judicial proceedings and of the law enforcement process are the "important functions" served by providing public access, it seems abundantly clear that providing public access to this complaint, which raises issues that question both the integrity of the proceedings and the law enforcement process in this case, is appropriate and, indeed, required.

For the foregoing reasons, the Court (1) **DENIES** the motion to file *ex parte* and directs the government to provide an unredacted copy of the complaint to the defense, subject to a protective order; and (2) **GRANTS IN PART AND DENIES IN PART** the government's motion to file the complaint under seal. Accordingly, the Court will provide counsel with a copy of the Court's final redacted complaint by no later than 4:00 p.m. on December 20, 2008. At 4:00 p.m. on Monday, December 22, 2008, the Court will post the redacted copy of the complaint on the public docket. All other pleadings and transcripts associated with the pending motions shall remain sealed pending further order of the Court.

**SO ORDERED.**


**Signed:    Emmet G. Sullivan**
**United States District Judge**
**December 19, 2008**

29