IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In Re SPECIAL PROCEEDINGS | : | Misc. No. 09-0198 (EGS) |

**ORDER**

In the fall of 2008 in highly-publicized proceedings before this Court, then-U.S. Senator Theodore F. Stevens was indicted, tried and found guilty of making false statements, by failing to disclose gifts he received on his Senate Financial Disclosure Forms, in violation of 18 U.S.C. § 1001(a)(1) and (2). During the course of the five-week jury trial and for several months following the trial, there were serious allegations and confirmed instances of prosecutorial misconduct that called into question the integrity of the criminal proceedings against Senator Stevens. On April 1, 2009, after acknowledging some of the misconduct and specifically admitting two instances in which the prosecution team had failed to produce exculpatory information to the defense in violation of the government's constitutional obligations,[1] the Department of Justice moved to set aside the verdict and dismiss the indictment of Senator Stevens with prejudice.

---

[1] *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

On April 7, 2009, after granting the government's motion, and in recognition of (1) the significance of the government's decision to dismiss the indictment and not to seek a retrial; (2) the government's admission that it committed *Brady* violations and made misrepresentations to the Court during the prosecution of Senator Stevens; (3) the prosecutorial misconduct that permeated the proceedings before this Court to a degree and extent that this Court had not seen in twenty-five years on the bench; and (4) the likelihood based on events during and after the trial, including the information revealed by the Department of Justice in support of its motion to vacate the verdict and dismiss the indictment, that the prosecution team may have committed additional constitutional and procedural violations during the *Stevens* prosecution that had yet to be discovered or addressed, the Court appointed Henry F. Schuelke, III to investigate and prosecute such criminal contempt proceedings as may be appropriate against the six Department of Justice attorneys responsible for the prosecution of Senator Stevens. *See* Order Appointing Henry F. Schuelke, *United States v. Stevens*, No. 08-cr-231 (Apr. 7, 2009).

Mr. Schuelke has informed the Court that he has concluded his investigation, and he has submitted to the Court *in camera* a five-hundred page report detailing the findings of his investigation. In order to discharge his obligations and fully

2

investigate the prosecutors' conduct during the *Stevens* prosecution, Mr. Schuelke and his esteemed colleague, William B. Shields, reviewed more than 150,000 pages of documents, interviewed numerous witnesses, conducted twelve depositions, and, by necessity, acquired a comprehensive understanding of the government's investigation, charges, pre-trial and trial proceedings not only in the *Stevens* matter, but also in relevant aspects of at least two other federal prosecutions brought by the Department of Justice's Public Integrity Section against Alaskan state officials, including *United States v. Kott*, No. 07-30496, 2011 U.S. App. LEXIS 6058 (9th Cir. Mar. 24, 2011), and *United States v. Kohring*, 637 F.3d 895 (9th Cir. 2011).  Mr. Schuelke informs the Court that pursuant to this Court's directive, officials at the Department of Justice have cooperated fully with his investigation.

Based on their exhaustive investigation, Mr. Schuelke and Mr. Shields concluded that the investigation and prosecution of Senator Stevens were "permeated by the systematic concealment of significant exculpatory evidence which would have independently corroborated his defense and his testimony, and seriously damaged the testimony and credibility of the government's key witness."  *See* Report to the Honorable Emmet G. Sullivan of Investigation Conducted Pursuant to the Court's April 7, 2009 Order ("Mr. Schuelke's Report" or "Report") at 1 (currently on

3

file under seal and *in camera*). Mr. Schuelke and Mr. Shields found that at least some of the concealment was willful and intentional, and related to many of the issues raised by the defense during the course of the *Stevens* trial. Further, Mr. Schuelke and Mr. Shields found evidence of concealment and serious misconduct that was previously unknown and almost certainly would never have been revealed – at least to the Court and to the public – but for their exhaustive investigation.

Despite his findings of significant, widespread, and at times intentional misconduct, Mr. Schuelke is not recommending any prosecution for criminal contempt.[2] Mr. Schuelke bases his conclusion not to recommend contempt proceedings on the requirement that, in order to prove criminal contempt beyond a reasonable doubt under 18 U.S.C. § 401(3), the contemnor must disobey an order that is sufficiently "clear and unequivocal at the time it is issued." *See, e.g.*, *Traub v. United States*, 232 F.2d 43, 47 (D.C. Cir. 1955). Upon review of the docket and proceedings in the *Stevens* case, Mr. Schuelke concludes no such Order existed in this case. Rather, the Court accepted the repeated representations of the subject prosecutors that they

---

[2] Mr. Schuelke "offer[s] no opinion as to whether a prosecution for Obstruction of Justice under 18 U.S.C. § 1503 might lie against one or more of the subject attorneys and might meet the standard enunciated in 9-27.220 of the Principles of Federal Prosecution." *See* Mr. Schuelke's Report at 514 n.76 (citing Indictment, *United States v. Convertino, et al.*, No. 2:06-cr-20173 (E.D. Mich. Mar. 29, 2006)).

4

were familiar with their discovery obligations, were complying with those obligations, and were proceeding in good faith. *See, e.g.,* Transcript of Motions Hearing, P.M., at 14-15, *Stevens*, No. 08-cr-231 (Sept. 10, 2008) ("THE COURT: I'm not going to write an order that says 'follow the law.' We all know what the law is. The government – I'm convinced that the government in its team of prosecutors is thoroughly familiar with the decisions from our Circuit and from my colleagues on this Court, and that they, in good faith, know that they have an obligation, on an ongoing basis to provide the relevant, appropriate information to defense counsel to be utilized in a useable format as that information becomes known or in the possession of the government, and I accept that.").[3] Because the Court accepted the prosecutors' repeated assertions that they were complying with their obligations and proceeding in good faith, the Court did not issue a "clear and unequivocal" order directing the attorneys to follow the law.

This Court has always recognized the public's interest in these proceedings and has maintained from the outset that the Court intends to make public the results of Mr. Schuelke's

---

[3] Mr. Schuelke also notes that "[i]t should go without saying that neither Judge Sullivan, nor any District Judge, should have to order the Government to comply with its constitutional obligations, let alone that he should feel compelled to craft such an order with a view toward a criminal contempt prosecution, anticipating its willful violation." Mr. Schuelke's Report at 513.

5

investigation.  *See, e.g.*, Transcript of Hearing 46:7-11, *Stevens*, (April 7, 2009) ("[T]he events and allegations in this case are too serious and too numerous to be left to an internal investigation that has no outside accountability.  This court has an independent obligation to ensure that any misconduct is fully investigated and addressed in an appropriate public forum.").  The public's interest in the results of this investigation, which reveal failures of supervision and/or misconduct by attorneys in the Department of Justice's Public Integrity Section in the prosecution of a sitting United States Senator, is as compelling today as it was on April 7, 2009.  In fact, as recently as November 8, 2011, Attorney General Eric Holder was questioned by members of the United States Senate during a hearing before the Senate's Judiciary Committee about the Department of Justice's investigation into the *Stevens* prosecution, and the Attorney General acknowledged the public's important interest in these matters.  *See* Sean Cockerham, *Review of Stevens Prosecution Nears Completion, Holder Says*, Anchorage Daily News, Nov. 9, 2011 ("What I have indicated was that I want to share as much of [the Office of Professional Responsibility report] as we possibly can given the very public nature of that matter and the very public decision I made to dismiss the case.").

While providing the public with the full results of Mr. Schuelke's investigation has been and remains the Court's intent, in view of the Amended Protective Order entered in these proceedings on December 13, 2009, and this Circuit's holding in *In re North*, 16 F.3d 1234 (D.C. Cir. 1994), the Court has determined that Mr. Schuelke's complete report should not be made public at least until the Department of Justice has had the opportunity to review the report.  The Court has further determined that it is appropriate to afford the subject attorneys and Senator Stevens's attorneys the opportunity to review the report, under the terms and conditions set forth below.  The Court will then consider any objections to making Mr. Schuelke's Report public; any such objections shall be filed in accordance with this Order, as set forth below.  Regrettably, and contrary to this Court's commitment to the public's right of access, these interim proceedings may need to be conducted under seal until the Court has considered any objections raised by either the Department of Justice or the subject attorneys.  The Court will schedule any further proceedings, sealed or otherwise, at the appropriate time.  Accordingly, it is hereby

**ORDERED** that the Department of Justice shall forthwith move to unseal the relevant pleadings in *United States v. Boehm*, Case 04-cr-003 (D. Alaska) and *United States v. Stevens*, and transcripts in *United States v. Kott*, No. 07-cr-056 (D. Alaska)

and *United States v. Kohring*, No. 07-cr-0055 (D. Alaska), or, by no later than December 5, 2011, shall inform this Court why the Department of Justice objects to such unsealing.[4]  It is further

**ORDERED** that the Report shall not be disclosed during the pendency of these proceedings except as follows:

1.  Mr. Schuelke shall provide five copies of the Report to the Department of Justice, and two copies to each of the subjects of the Report and to Senator Stevens's attorneys. Initially, the Department will receive unredacted copies of the Report; the copies provided to the subject attorneys and Senator Stevens's attorneys will be redacted to protect the contents of

---

[4] The relevant sealed materials are as follows:  In *Boehm*, (1) Gov't Mot. in Limine to Limit Cross Examination of B. Tyree, filed July 26, 2004.  (Note that this motion was filed publicly as an exhibit to the government's opposition to defendant's motion to dismiss in *Kott*, Sept. 26, 2011.)  (2)  Gov't Reply in Supp. of Mot. in Limine, filed Aug. 17, 2004.  (Note this was filed publicly (with redactions) in *Boehm* on Nov. 4, 2009.)  (3) Judge Sedwick's Decision on Mot. in Limine, Order, Sept. 14, 2004.  (4) Gov't Opp'n to Def.'s Motion for Recons. of Decision re: Mot. in Limine, Oct. 6, 2004.  (Note this was filed publicly (with redactions) in *Boehm* on Nov. 4, 2009.)  In *Kott*, (1) Tr. of Sealed Hr.'g, Sept. 13, 2007.  In *Kohring*, (1) Tr. of Sealed Hr.'g Oct. 25, 2007.  In *Stevens*, (1) Gov't Mot. in Limine to Exclude Inflammatory, Impermissible Cross Examination under Rule 608(b), filed Aug. 14, 2008.  (Note this motion was withdrawn during a hearing on Sept. 5, 2008.) (2) Def.'s Opp'n to Gov't Rule 608(b) Motion, filed Aug. 25, 2008.  (3) Def.'s Opp'n to Gov't Mot. to Seal, filed Aug. 25, 2008.  (4) Gov't Reply in Supp. of Mot. to Seal and Request to Strike Def.'s Opp'n to Mot. in Limine to Exclude Inflammatory, Impermissible Cross, filed Sept. 2, 2008. Note that this Court unsealed all hearings in *Stevens* with the consent of the parties. *See* Order, Feb. 24, 2009 (Doc. No. 323); *see also* Hr.'g Tr. 44:16 – 45:10 (Apr. 7, 2009).

the still-sealed materials in *Boehm*, *Kott*, *Kohring*, and *Stevens*. Following the unsealing of some or all of those materials, Mr. Schuelke shall provide unredacted copies of the Report to the subject attorneys and Senator Stevens's attorneys.

2. Disclosure of the Report shall be limited to five individuals at the Department of Justice to be selected by the Department, two for each of the subjects of the Report to be selected by the subject, and two of Senator Stevens's attorneys to be selected by his attorneys. Prior to disclosure of the Report to him or her, each individual who will have access to the Report shall sign a Confidentiality Agreement agreeing, *inter alia*, not to disclose or discuss the Report, or its contents, except as provided in the Confidentiality Agreement. The individuals to whom the Report shall be disclosed shall contact Mr. Schuelke to make arrangements to execute the Confidentiality Agreement and receive the Report. It is further

**ORDERED** that pursuant to the Amended Protective Order, if the Department of Justice believes that any of the Material(s) or sealed pleadings or transcripts identified by Mr. Schuelke in his report should be withheld from the public, the Department of Justice shall file a motion under seal by no later than January 6, 2012, specifically identifying the Material(s) and/or sealed pleadings and/or transcripts it believes should be withheld and the precise legal basis for the proposed withholding (*i.e.*, the

9

basis for any privilege, whether the material is covered by Federal Rule of Criminal Procedure 6(e), etc.).[5] In considering whether to file such a motion, the Court strongly encourages the Department of Justice to consider the very significant public interest in these proceedings, the fact that much of the information in the Material(s) and pleadings may already be known to the public and/or subject to future disclosure, the fact that the investigations and prosecutions related to these matters are now concluded, and the benefit of promptly bringing these regrettable events to closure, not just for the benefit of the public and the late Senator's family, but for the Department of Justice, as well.  It is further

**ORDERED** that any other individual seeking to withhold from the public information contained in Mr. Schuelke's Report shall file a motion under seal, and, if appropriate, any comments or

---

[5] The Amended Protective Order simply provides that if "any Materials [provided by the Department of Justice] are to be included in applications or submissions filed with or submitted to the Court, or disclosed during court proceedings, other than under seal, Mr. Schuelke will advise the Department of Justice five business days in advance of such submission or proposed disclosure so that, if deemed necessary, the Department of Justice has the opportunity to present its position on the public disclosure of such Materials to the Court for consideration." Amended Protective Order at 2, *In re Special Proceedings*, No. 09-mc-198, (Dec. 13, 2009).  The Court, however, has determined that it is appropriate to afford the Department of Justice the opportunity to review Mr. Schuelke's Report in its entirety, rather than just be notified of Materials relied on in the report, and to give the Department of Justice substantially more time than the five days contemplated in the Amended Protective Order.

factual information regarding the Report, by no later than
January 6, 2012, and shall provide the basis and nature of the
relief sought.  Any such person shall be mindful, however, that
(1) the Court has already expressed its intent to make the
results of Mr. Schuelke's Report public to the greatest extent
possible; (2) in response to previous efforts by the *Stevens*
prosecution team to withhold from the public information related
to allegations of prosecutorial misconduct in the *Stevens* case,
the Court has already addressed the significant constitutional
protections providing public access to court proceedings under
these or similar circumstances, *see, e.g.*, Memorandum Opinion &
Order 16-17, *Stevens*, No. 08-cr-231, (Dec. 19, 2008) at 16-17
("'Under [the *Globe Newspaper*] test, the first amendment
protects public access to an aspect of court proceedings if such
access has historically been available, *and serves an important
function of monitoring prosecutorial or judicial misconduct*.'"
(emphasis added) (quoting *Washington Post v. Robinson*, 935 F.2d
282, 288 (D.C. Cir. 1991))); (3) the identities of the subjects
of this investigation have already been disclosed and therefore
this situation is not analogous to a grand jury investigation in
which the subject of the investigation is not identified to the
public and the subject may be prejudiced if her identity is
revealed – in fact, under these circumstances, some or all of
the subjects may be prejudiced by withholding the results of Mr.

Schuelke's Report from the public; (4) the matters Mr. Schuelke investigated stem from allegations and events that occurred in a highly-publicized trial of a sitting United States Senator and therefore the public interest in this matter is well-documented and not a matter of mere speculation; and (5) the public availability of the results of Mr. Schuelke's Report will facilitate the public's understanding of the Court's rulings in the *Stevens* case and the constitutional and procedural requirements inherent in our criminal justice system, and will better enable the public to follow and place in context the developments in the *Stevens* case, all of which, again, were widely publicized at the time. *See, e.g.*, *In re North*, 16 F.3d at 1240 (discussing factors to be weighed in determining whether to publicly release special prosecutor's report). Accordingly, while the Court will give appropriate consideration to any legal argument to withhold Mr. Schuelke's Report from the public, the Court notes that the "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984).

    **SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **November 21, 2011**